Case No. 21-1180

# United States Court of Appeals for the District of Columbia Circuit

FINNBIN, LLC,

*Petitioner*,

*v.*

UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION,

*Respondent*.

**SUPPLEMENTAL APPENDIX**

KATHLEEN R. HARTNETT
   *Counsel of Record*
JULIE VEROFF
COOLEY LLP
3 Embarcadero Center
San Francisco, CA 94111
Telephone: (415) 693-2000
khartnett@cooley.com
jveroff@cooley.com

ADAM M. KATZ
COOLEY LLP
500 Boylston Street
Boston, MA 02116
Telephone: (617) 937-2351
akatz@cooley.com

*Counsel for Petitioner Finnbin, LLC*

February 1, 2022

# TABLE OF CONTENTS

| Document Name | Date | SA Page |
|---|---|---|
| Comment from Kelly Mariotti, JPMA: "Re: Comments on Docket CPSC-2017-0020-0010 Infant Sleep Products Supplemental NPR" | 2/26/2020 | SA 1 |

# CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February 2022, the enclosed appendix was served on all registered counsel through this court's electronic filing system. I further certify that all parties required to be served will be served by third-party commercial carrier for delivery within two days of the electronic filing, pursuant to Federal Rule of Appellate Procedure 25(c)(1) and D.C. Circuit Rule 25(d).

/s/ Kathleen R. Hartnett
KATHLEEN R. HARTNETT



1120 Route 73
Suite 200
Mount Laurel, NJ 08054

February 26, 2020

Alberta E. Mills
Office of the Secretary
Consumer Product Safety Commission, Room 820
4330 East West Highway
Bethesda, MD 20814

**Re: Comments on Docket CPSC-2017-0020-0010 Infant Sleep Products Supplemental NPR**

Dear Secretary Mills,

The Juvenile Products Manufacturers Association (JPMA) appreciates this opportunity to share comments for the record on the above referenced matter.

JPMA is a national not-for-profit trade association representing 95% of the prenatal to preschool products industry including the producers, importers, and distributors of a broad range of childcare articles that provide protection to infants and assistance to their caregivers. JPMA supports the industry and the goal of children's safety through information sharing, product performance certification, and business assistance conducted with appreciation for the needs of parents, children, caregivers, and retailers. JPMA actively works with government officials, consumer groups, and industry leaders on programs to educate consumers on the safe selection and use of juvenile products.

JPMA applauds CPSC's commitment to collaboration with industry both within the ASTM standards revision process and by seeking comment on 104 rulemakings and CPSIA updates. We believe that collaboration is the key to ensure all perspectives are considered in these matters, so that the best and safest standards and policies can be enacted, referred to in federal requirements, and made available to the manufacturing and consumer communities. In the spirit of collaboration, we offer the below concerns with the Infant Sleep Products Supplemental NPR (SNPR).

**JUVENILE PRODUCTS MANUFACTURERS ASSOCIATION, INC.**

1120 Route 73, Suite 200 • Mt. Laurel, NJ 08054
**TEL:** 856.638.0420 • **FAX:** 856.439.0525
jpma@jpma.org • www.jpma.org

SA001

**Support Limited Sleep Surface Angle for Products Intended for Overnight Unattended Sleep.**

We support requirements that would specify a seat back angle with a maximum allowable seat back angle equal to or less than 10° in all positions recommended for unattended sleep. This is consistent with sleep surface angle limitations on a number of juvenile products already marketed and promoted for sleeping such as cribs, cradles, bassinets, bedside sleepers and play yards.[1]

However, we cannot support a requirement that all products merely associated with infant sleep meet 16 CFR 1218 Safety Standard for Bassinets and Cradles without due consideration of the nature of the product. There are a variety of products that have distinct design and functional features that necessitate unique Standards. This is why cribs, non-full-size cribs/play yards, bassinets and bedside sleepers all are subject to distinct requirements in such separate Standards.[2]

In general, the Supplemental NPR does not propose to cover products with adjustable seat back positions that are covered by other mandatory or voluntary standards in inclined position(s), which we believe should clearly also exclude products used for activity or transport such as infant bouncers, infant rockers, hand-held carriers, stroller carriages or infant swings.[3] This would be in addition to the specified exclusions for bassinets, cradles, full size and non full size cribs, bedside sleepers and play yards. In addition, several other product categories would not fall under the scope of the Supplemental NPR: (1) Sleep positioners; (2) sleep wedges, many of which are marketed as medical devices, putting them under the jurisdiction of the Food and Drug Administration; and (3) miniature infant hammocks marketed exclusively for use as photographic props.

---

[1] Such support is not based upon Dr. Mannen's Study which only provided bio mechanical measurements of stress in unrestrained prone situated infants (contrary to manufacturers recommendations and generally accepted safe sleep practice), did not indicate it was reasonably likely such misuse would occur, indicated that further study was required for sleep surface angle between 10-20 degrees and indicated that such study did not address side material with studied samples.

[2] See regulation at 16 CFR 1218, 16 CFR 1219, 16 CFR 1220, 16 CRR 1221, 16 CFR 1222, et seq.

[3] See for example other activity and transport juvenile products subject to regulation at 16 CFR 1215 through 1238, et seq.

JPMA strongly believes that the scope of such a standard must explicitly exclude activity and transport products with adjustable seat back positions, including, but not limited to those mentioned above, in the narrative of the SNPR.

**The Scope of Products Should be Limited**
Additionally, in a CPSC staff letter dated December 12, 2019, addressed to Mr. Scott Lewis and Mr. Richard Rosati, Chairmen of Subcommittees on Bassinets and Cradles and Infant Incline Sleep Products, respectively, it is outlined that despite their 10º or less angle of sleep surface, products such as compact bassinets, baby boxes and in-bed sleepers also pose a risk due to their "instability", potentially insufficient side height, and other concerns, and would render these products, currently widely available in the marketplace, but not yet subject to a voluntary or mandatory standard, effectively banned from being sold due to the implementation of an unclear mandatory rule referencing F3118-17, as revised and presented in the SNPR. However, while sleep surface angles can be limited, as noted above, requirements addressing frames, height, side rails, etc., would not be applicable to such products. There are likely a number of other products currently available which would meet the same fate without explicit exclusionary language included in the scope of this rule.

**The Term "Infant Sleep" is Too Broad**
At numerous ASTM subcommittee meetings, representing various product categories, discussions have ensued related to defining the many different types of "sleep" that infants undertake. The proposed rule should clearly and specifically apply only to products marketed and promoted solely for unattended sleep. Terminology is important in this regard. For example, "overnight sleep" is generally accepted as "unattended". However, "attended" or "supervised" sleep can be understood to mean "napping," which often occurs during the day when a caregiver frequently checks on the infant or could even occur in the same room as the caregiver. Such "napping" in all reality, often occurs in products such as stroller/carriages, CRS travel systems, swings or bouncers. While these products are not "marketed" specifically for sleep, sleep is an incidental use and should not arguably be within the scope of this proposed rule. The scope of such rule should be limited and products such as these, among others, should not be adversely impacted by it. JPMA requests that the scope of the rule be limited and requests that specific exclusionary language be included in the scope of this rule.

**Stakeholders Were Excluded from Rulemaking Process**
As indicated in the Proposed Rule document, CPSC staff worked collaboratively with a varied group of stakeholders, via the ASTM standard development process, under the purview of the F15.18 Subcommittee, to develop F3118, the Standard Consumer Safety Specification of Infant Incline Sleep Products.  The original NPR, issued in 2017, incorporated by reference F3118-17, with one modification.  The proposed rule under the 2017 NPR was "substantially the same as" F3118-17, as required by Section 104 of the CPSIA.  Additionally, as also required by Section 104 of the CPSIA, CPSC staff did "consult with representatives of consumer groups, juvenile product manufacturers, and independent child product engineers and experts to examine and assess the effectiveness of the relevant voluntary standards", by way of engagement in the F15.18 subcommittee and related F3118 task groups.

However, the SNPR for infant sleep products ostensibly did not meet either of these CPSIA Section 104 requirements.  At the October 2019 ASTM subcommittee meetings, CPSC staff <u>informed</u> stakeholders about the change in intent and direction for these impacted products after the SNPR was issued.  CPSC staff seeks to remain engaged in the relevant ASTM subcommittees, but in support of the development and release of the SNPR. This SNPR, despite drastic modification to F3118-17 by reference, was not a collaborative effort in that no way did CPSC staff "consult with representatives....voluntary standards."  The stakeholder community, impacted and potentially impacted manufacturers, are in the very unfortunate position of being subject to a mandatory rule that they had no part in helping to craft, by way of the ASTM development process. Outside the scope of this rulemaking Commission Staff has also acted in an ultra vires manner to sanitize the marketplace from incline sleep products otherwise subject to existing Standards and this rulemaking.[4]

**Recommendation**
It is the recommendation of JPMA that the Commission reissue a clarified SNPR in order to allow time for the stakeholder community to examine the impact of the proposed rule, in collaboration with CPSC staff, and to follow the ASTM standard development process of revising F3118 together,

---

[4] Contrary to a Commission Vote to issue this SNPR and undertake rulemaking, inconsistent Press Releases were undertaken seeking elimination from the marketplace of products subject to this rulemaking without a required Commission Vote or a Commission substantive determination on the rulemaking before it. The data cited in such releases was also inconsistent with the data cited in the Staff briefing package. There remains a concern that associative data creates an impression that products caused fatalities when such evidence is lacking and that Directive 1450.2 was not adhered to.

so that the scope can be made clear and any potential unintended consequences can be clarified, evaluated and mitigated.

**Conclusion**

Product safety is the top priority for JPMA and its' members. We appreciate the opportunity to provide comment on this matter and look forward to remaining engaged as leaders in ensuring the safe design, manufacture and use of juvenile products.

Respectfully Submitted,

Kelly Mariotti, JD, CPA, CAE
Executive Director